UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
   ROBERT CATALANELLO,                                   :
                                                Plaintiff,               :
                                                                         :          13 Civ. 7121 (PAE)
            -v-                  :
                                                                         :
   ZACHARY A. KRAMER,                                    :          OPINION & ORDER
                                                                         :
                                                Defendant.               :
                                                                         :
------------------------------------------------------------------------ X

PAUL A. ENGELMAYER, District Judge:

      This defamation suit arises out of the treatment by a scholar, both in a law review article

and a related lecture, of an incident involving a securities industry trader that had been the

subject of a publicized employment lawsuit.

      Plaintiff Robert Catalanello ("Catalanello") is a managing director for Credit Agricole

CIB (formerly known as Calyon) ("Credit Agricole") in New York.  He brings claims of

defamation and false-light invasion of privacy against defendant Zachary Kramer ("Kramer"), an

associate dean and professor of law at the Sandra Day O'Connor College of Law at Arizona

State University.  Catalanello's claims arise out of (1) an article titled "Of Meat and Manhood,"

which Kramer wrote and which was published in the *Washington University Law Review*, and

which in part addressed a previous employment-discrimination lawsuit brought against

Catalanello; and (2) a lecture given by Kramer at the Western New England University School of

Law, titled "Of Meat and Manhood/The New Sex Discrimination."  Kramer moves to dismiss the

Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, that motion is granted.

I.      **Background**[1]

   A.      **Factual Background**

       1.  **The Pacifico Lawsuit Against Catalanello**

On January 26, 2009, Ryan Pacifico, a former junior foreign exchange trader at Credit
Agricole, filed a lawsuit in New York State Supreme Court.  The suit alleged that Catalanello,
Pacifico's former supervisor, had discriminated against him and subjected him to a hostile work
environment, in violation of the human rights laws of New York State and New York City.  *See*
Am Compl. ¶ 11; Dkt. 69 (Affidavit of Zachary A. Kramer ("Kramer Aff.")) Ex. G ("Pacifico
Compl.").  Relevant here, Pacifico alleged that Catalanello perceived him to be gay because
Pacifico was a vegetarian, and that Catalanello had subjected Pacifico to harassment based on
this assumption.  Pacifico Compl. ¶¶ 10–22.  Specifically, Pacifico's Complaint alleged that
Catalanello would call Pacifico "gay" or "homo" in front of coworkers, and would harass him for
not eating meat.  *See*, *e.g.*, *id.* ¶ 10 (alleging that "[i]n or about 2007, Pacifico was showing a
colleague pictures of himself online competing in a triathlon.  Catalanello approached, and
referring to Pacifico's biker shorts, said 'That's you?  Those are some pretty gay tights.  Figures
you'd like them.'"); *id.* ¶ 14 (alleging that "[w]hile arranging for a dinner for [Credit Agricole's]
New York foreign exchange traders . . . Catalanello told the traders they were all going out to a

---

[1] The facts below are drawn from the Amended Complaint, Dkt. 64 ("Am. Compl."), the
attached exhibits, and the documents incorporated by reference, including the full text of the
article and the lecture.  *See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d
490, 500 (S.D.N.Y. 2011) (on a motion to dismiss, "'a district court may consider the facts
alleged in the complaint, documents attached to the complaint as exhibits, and documents
incorporated by reference in the complaint'") (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d
104, 111 (2d Cir. 2010)).  The Court accepts all factual allegations in the Amended Complaint as
true, drawing all reasonable inferences in the plaintiff's favor.  *See Koch v. Christie's Int'l PLC*,
699 F.3d 141, 145 (2d Cir. 2012).

Brazilian steakhouse.  When one asked what Pacifico can eat there, Catalanello replies, 'Who the fuck cares?  It's his fault for being a vegetarian homo.'").  On August 12, 2009, Catalanello filed an Answer, denying the allegations in Pacifico's Complaint.  Am. Compl. ¶ 12; Kramer Aff. Ex. G at 12–18.

On August 22, 2012, Pacifico voluntarily terminated his suit against Catalanello with prejudice.  Am. Compl. ¶ 14; Dkt. 68 (Declaration of Peter T. Shapiro ("Shapiro Decl.")) Ex. B.

### 2.  Kramer's Law Review Article

In August 2010, while Pacifico's lawsuit was pending, Kramer began researching and writing an article about emerging issues in employment discrimination law.  *See* Am. Compl. ¶ 8; Kramer Aff. ¶ 23.  In February or March 2011, Kramer submitted the article to law reviews for publication, using an online service operated by the Berkeley Electronic Press.  *See* Am. Compl. ¶ 8; Kramer Aff. ¶ 24.  In March 2011, Kramer accepted an offer from the *Washington University Law Review* to publish the Article and, during that same month, posted the Article to the Social Science Research Network (SSRN), an online repository of academic research.  *See* Am. Compl. ¶ 8; Kramer Aff. ¶ 24.  On March 15, 2012, a revised version of the article was published in print and online in the *Washington University Law Review*.  *See* Am. Compl. ¶¶ 9– 10; Kramer Aff. ¶ 25.

In the article, Kramer challenges how existing employment discrimination law characterizes sex discrimination—specifically, the law's treatment of gender stereotyping. Kramer argues that courts "have grown increasingly suspicious of gender-stereotyping claims that they view as attempts to capture traits not protected under Title VII," such as sexual orientation, and "have regularly rejected these claims, characterizing them as impermissible attempts to 'bootstrap' protection for sexual orientation into Title VII."  Kramer Aff. Ex. H

("Article") at 6.  The goal of the article, according to Kramer, "is to show that this bootstrapping logic is faulty," and to advocate for a more "holistic" approach to complex sex discrimination claims, which recognizes "that sometimes sex discrimination manifests as other forms of bias." *Id.* at 7, 8.  At several points, the article uses the allegations in the Pacifico Complaint regarding male vegetarianism in support of that discussion.  *Id.* at 7–9, 20–28.  Relevant here, the article describes the Pacifico Complaint as a "case study" or "vehicle" to "highlight[] the messiness of modern sex discrimination" both "in terms of how employees experience discrimination" and "in terms of how courts analyze sex discrimination claims."  *Id.* at 7.  After discussing Pacifico's Complaint, Kramer concludes by stating that "[t]he lesson of Pacifico's case is that sex discrimination sometimes manifests as other forms of discrimination—in this case, as a hybrid of vegetarian and sexual orientation discrimination," which, in turn, reveals "a fundamental limitation of Title VII's discriminatory causation analysis:  the mismatch between the legal regulation of discrimination and the lived experience of discrimination."  *Id.* at 28.

### 3.  Kramer's Lecture

On April 10, 2012, Kramer gave a lecture, based on the article, at the Western New England University School of Law in Massachusetts.  Am. Compl. ¶ 30; Shapiro Decl. Ex. D ("Lecture Video").  His lecture also discussed the Pacifico Complaint and Kramer's theory to the effect that male vegetarianism is, wrongly, an unprotected trait in federal employment discrimination law.  *See* Am. Compl. ¶ 34; Lecture Video.  In discussing the Pacifico Complaint in the lecture, Kramer stated that "the facts are still contested at this point, but it doesn't look good."  Lecture Video at 25:55.  Although Kramer did not identify Catalanello by name in the lecture, Kramer did cite the article, in which Catalanello is identified by name.  Am. Compl.

¶ 51.  A recording of the lecture was later published by Western New England University School of Law's website under "School of Law News."  Am. Compl. ¶ 32.

### B.      Procedural History

On December 28, 2012, Catalanello filed his original Complaint in this case in the District of New Jersey, naming Kramer, the Washington University School of Law, and the Western New England University School of Law as defendants.  Dkt. 1.  On May 23, 2013, Washington University School of Law was voluntarily dismissed with prejudice.  Dkt. 37.  On September 19, 2013, Western New England University School of Law was also voluntarily dismissed with prejudice.  Dkt. 47.  At that point, the District of New Jersey lacked personal jurisdiction over Kramer, the sole remaining defendant.  Accordingly, the case was transferred to this Court.  Dkt. 44.

On October 31, 2013, Kramer submitted a motion to dismiss the Complaint.  Dkt. 57.  On November 21, 2013, Catalanello filed an Amended Complaint, Dkt. 64, alleging four causes of action:  two counts of defamation and two of false light invasion of privacy (one each for the article and lecture).  Am. Compl. ¶¶ 35–62.  The Amended Complaint alleges, in substance, that, in both the article and the lecture, Kramer defamed Catalanello and placed him in a false light by presenting Catalanello's purported harassment of Pacifico as established fact, and by attributing to him certain discriminatory motivations.  On November 27, 2013, Kramer submitted another motion to dismiss, Dkt. 67, with an accompanying memorandum of law, Dkt. 72 ("Def. Br.").  On December 11, 2013, Catalanello submitted his opposition to Kramer's motion to dismiss.  Dkt. 73 ("Pl. Br.").  On December 18, 2013, Kramer submitted a reply brief.  Dkt. 75 ("Def. Rep. Br.").  On January 31, 2014, the Court heard argument on the pending motion.

## II.      Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555.  The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).  The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  In applying these principles, the Court "must confine its consideration to facts stated on the face of the complaint," *Tarshis v. Riese Org.*, 211 F.3d 30, 39 (2d Cir. 2000), and "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).

Furthermore, "there is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Adelson v. Harris*, No. 12 Civ. 6052 (JPO), 2013 WL 5420973, at *10 (S.D.N.Y. Sept. 30, 2013).

## III.   Discussion

As noted, the Amended Complaint alleges two counts of defamation and two counts of false light invasion of privacy against Kramer (one each for the article and the lecture).  The Court will address Catalanello's defamation and false light claims in turn, after reviewing the applicable choice of law rules.

### A.   Choice of Law

As a threshold matter, the Court must determine which state's law applies to this action. In the Amended Complaint, Catalanello alleges that his claims regarding the article are governed by the laws of Missouri (where the article was published), and that his claims regarding the lecture are governed by the laws of Massachusetts (where the lecture took place).  *See* Am. Compl. ¶¶ 4–5.  In his brief opposing the motion to dismiss, however, he argues that the laws of New York (where the conduct to which the alleged defamatory statements refer took place) govern his defamation claims, and that the laws of New Jersey (where Catalanello is domiciled) govern his false-light invasion of privacy claims.  Pl. Br. at 27–29.  Kramer, for his part, argues that New Jersey law should apply to all of Catalanello's claims.  Def. Br. at 6–12; Def. Rep. Br. at 1–3.

Federal courts sitting in diversity apply the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New York choice of law

rules, the first step is to "determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993). The defamation laws of New York and New Jersey substantially overlap, but they differ with respect to standards of fault and damages. Furthermore, New Jersey recognizes the tort of false light invasion of privacy, *see, e.g., Savely v. MTV Music Television*, Civ. A. No. 11-1021 (SDW), 2011 WL 2923691 (D.N.J. July 18, 2011), while New York does not, *see, e.g., Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115 (1993). Thus, a choice of law question exists.

In tort actions, New York courts apply the substantive law of the jurisdiction that has the most significant interest in "'the specific issue raised in the litigation.'" *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196 (1985) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)). In evaluating the interests of a jurisdiction in a particular tort, New York courts distinguish between "conduct-regulating" and "loss allocating" rules. *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 522 (1994); *see also Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). Where the laws at issue are primarily conduct-regulating, "the law of the place of the tort will usually have a predominant, if not exclusive, concern," *Padula*, 84 N.Y.2d at 522 (internal quotation marks and citation omitted), because "the law of the jurisdiction where the tort occurred will generally [have] the greatest interest in regulating behavior within its borders," *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72 (1993). If the laws are primarily loss allocating, the so-called "*Neumeier* rules" apply. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 129 (1972); *see also Schultz*, 65 N.Y.2d 198–202 (applying the *Neumeier* rules); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (same).

"Discouraging defamation is a conduct regulating rule," and thus "the situs of the tort[] should control." *Lee*, 166 F.3d at 545; *see Machleder v. Diaz*, 801 F.2d 46, 51–52 (2d Cir. 1986)

(affirming application of New Jersey law to defamation and false-light invasion of privacy claims on the ground that New Jersey "has the most significant relationship with the occurrence and with the parties"). "'[T]he locus of the tort is where the plaintiff suffered injury.'" *Adelson v. Harris*, No. 12 Civ. 6052 (JPO), 2013 WL 5420973, at *6 (S.D.N.Y. Sept. 30, 2013) (quoting *Condit v. Dunne*, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004)). Thus, in a defamation action, "'often the Court can resolve the choice of law analysis . . . simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state.'" *Id.* (quoting *Condit*, 317 F. Supp. 2d at 353); *see also Lee*, 166 F.3d at 545 (in a defamation case, "'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern") (quoting *Reeves v. Am. Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)).

However, in multistate defamation cases, the state with the most significant relationship is not necessarily readily apparent. *See Adelson,* 2013 WL 5420973, at *6. "Thus, in cases where an allegedly defamatory statement is published nationally, there is only a 'presumptive' rule that the law of plaintiff's domicile applies, which 'does not hold true . . . if with respect to the particular issue, some other state has a more significant relationship to the issue or the parties.'" *Id.* (quoting *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984)) (alterations in *Adelson*) (other internal quotation marks omitted).

Therefore, the Court must determine whether there is a state with a more significant relationship to the issue or the parties than New Jersey, where Catalanello is domiciled. In making this determination, "New York courts weigh all the factors that might impact on the interests of various states in the litigation to make a choice of law determination," including, "where the plaintiff suffered the greatest injury"; "where the statements emanated and were

broadcast"; "where the activities to which the allegedly defamatory statements refer took place"; and "the policy interests of the states whose law might apply." *Condit*, 317 F. Supp. 2d at 353 (collecting cases); *see also Restatement (Second) of Conflict of Laws* (1971).

Here, Pacifico's article and lecture, which contained the allegedly defamatory statements, were originally published or broadcast in Missouri and Massachusetts, but were disseminated online, and thus potentially subjected Catalanello to reputational harm nationwide. Any such harm from these statements was felt most strongly in New Jersey, where Catalanello resided at the time of publication and continues to reside. On the other hand, Catalanello also claims to have suffered reputational harm in New York, where he worked. And the underlying defamatory statements discuss conduct that occurred in New York (*i.e.*, Catalanello's alleged discrimination against Pacifico). New Jersey, however, has a strong policy interest "in having its defamation laws applied to protect plaintiff, its resident, from the allegedly defamatory statements of outsiders." *Condit*, 317 F. Supp. 2d at 354. Neither Catalanello nor Kramer are domiciled in New York, and thus New York has a weaker interest in applying its laws to this litigation. Missouri and Massachusetts have no discernible policy interest in having their defamation laws apply.

Although it is a close call, on balance, these factors favor the application of New Jersey law. Because Catalanello is domiciled in New Jersey, New Jersey has the strongest interest in the outcome of the litigation. *See Babcock*, 12 N.Y.2d at 482 (New York's choice of law rule "allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation") (internal quotation marks omitted) (alteration in *Babcock*). Although New York has some interest in the litigation, it is not sufficiently weighty

to overcome the presumption in favor of the state of the plaintiff's domicile.  Accordingly, New Jersey defamation law applies.

### B.      Defamation Claim

Under New Jersey law, "[d]efamation imposes liability for publication of false statements that injure the reputation of another."  *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 765 (1989); *see also Salzano v. New Jersey Media Group Inc.*, 201 N.J. 500, 512 (2010) ("A defamatory statement is one that is false and harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person.").  To prove defamation, a plaintiff must establish, in addition to damages, that the defendant (1) "made a defamatory statement of fact"; (2) "concerning the plaintiff"; (3) "which was false"; (4) which was "communicated to a person or persons other than the plaintiff"; (5) with the requisite level of fault.  *Singer v. Beach Trading Co., Inc.*, 379 N.J. Super. 63, 80 (App. Div. 2005) (internal quotation marks and citation omitted).

"'Whether [a challenged] statement is susceptible of a defamatory meaning is a question of law for the court.'"  *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004) (quoting *Ward v. Zelikovsky*, 136 N.J. 516, 529 (1994)).  In making this determination, courts consider (1) the statement's content, *i.e.*, the "fair and natural meaning that will be given to the statement by reasonable persons of ordinary intelligence"; (2) the verifiability of the statement, *i.e.*, whether the statement is one of fact or of opinion; and (3) the context in which the statement appears, *i.e.*, "the listener's reasonable interpretation" of the statement in light of the surrounding circumstances.  *Id.* at 14–15 (internal quotation marks, alterations, and citations omitted).

The standard of fault depends on the status of the plaintiff.  "If the plaintiff is a private person, he or she need show only that the defendant was negligent"; if, on the other hand, "the plaintiff is a public figure, he or she need prove that the defendant was motivated by 'actual

malice'—that the defendant either knew the statement was false or recklessly disregarded its falsity." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 314 (App. Div. 2000) (citations omitted); *see generally New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).

Here, the Amended Complaint alleges that Kramer's article and lecture contain "false and defamatory statements of and concerning [Catalanello]." Am. Compl. ¶¶ 15, 33. The gravamen of Catalanello's defamation claims is that Kramer "blatantly misrepresented the contents of the Pacifico Complaint" and presented as "fact" information not alleged in the Pacifico Complaint. *Id.* ¶¶ 18, 22, 39(c)–(f). Catalanello claims that that the contents of the article and lecture have "subjected [him] to contempt, hatred and ridicule and have injured his reputation and otherwise caused [him] serious and permanent injury and damage." *Id.* ¶¶ 40, 45, 57, 62.

For the reasons that follow, the Court hold that the Amended Complaint fails to state a claim for defamation because the challenged statements are either (1) protected by the fair-report privilege; or (2) non-actionable opinion.

### 1.   Fair-Report Privilege

The fair-report privilege protects from liability the publication of defamatory statements appearing in a report of an official action or proceeding. *Salzano*, 201 N.J. at 513. Under New Jersey law, the fair-report privilege extends to allegedly defamatory statements contained in "filed pleadings that have not yet come before a judicial officer." *Id.* at 519.

"[I]n order for the privilege to apply, the publication must be a 'full, fair, and accurate account of the official proceeding.'" *Id.* at 522 (quoting *Costello*, 136 N.J. at 607). But, "[a]s long as the report is fair and accurate, both the publication's truth and the publisher's knowledge

12

of its truth or motivation for publishing it are irrelevant." *Id.* at 530 (internal quotation marks and citation omitted).  As the Supreme Court of New Jersey has explained,

> [F]or the privilege to apply, "[i]t is not necessary that [the account] be exact in every immaterial detail. . . . It is enough that it conveys to the persons who read it a substantially correct account of the [contents of the official document]."  Thus, the fair-report privilege provides protection even though an article may not be accurate in every conceivable aspect.
>
> In addition to being accurate, a report must also be fair.  A report that is accurate may not be edited and deleted in a way that renders its contents misleading.  Fairness requires that although the report need not be exhaustive, "it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it."  Although a reporter is allowed to make factual errors and omissions, the fair-report privilege will not protect a story if the errors and omissions mislead readers.

*Costello*, 136 N.J. at 607–08 (quoting *Restatement (Second) of Torts* § 611 comment f (1976)) (alterations in *Costello*).  "It is for the court to determine as a matter of law whether the report is a full, fair, and accurate account, and this determination is an objective one."  *Salzano*, 201 N.J. at 523 (internal quotation marks and citation omitted).

Here, Kramer gave a "full, fair, and accurate account" of the allegations in Pacifico's then-ongoing discrimination suit against Catalanello.  Significantly, Kramer did so in a way that made clear that the information presented from the Pacifico lawsuit consisted of mere allegations and that the lawsuit remained pending.  In this vein, the article introduces the Pacifico Complaint, with citations to the publicly-filed document in footnotes, as "an *ongoing lawsuit* in which an employee has brought a discrimination *claim* against his former employer, *alleging* that the employer discriminated against him because he is vegetarian."  Article at 7 (emphases added).  In the same paragraph, the article goes on to describe, in general terms, Pacifico's "claims" and "allegations."  *Id.*  Given this preface, a "reasonable person would understand that

the [Pacifico Complaint] alleged certain facts, but that those allegations had not yet been adjudicated." *Salzano*, 201 N.J. at 524–25.

To be sure, in the later sections of the article, in adverting to the Pacifico lawsuit, Kramer does not consistently repeat the words "claim" or "allegation" before each reference to Pacifico's Complaint. For example, as Catalanello alleges in the Amended Complaint, Kramer's article states the following: (1) "Catalanello subjected Pacifico to a steady barrage of taunts, insults, and demeaning antics"; (2) "The bulk of the harassment aimed to belittle Pacifico by equating vegetarianism with homosexuality"; (3) "Catalanello started to harass Pacifico as soon as he learned that Pacifico was vegetarian"; and (4) "Knowing full well that Pacifico was vegetarian, Catalanello purposely sought to punish Pacifico by refusing to order anything but meat for work-related meals." Am. Compl. ¶ 15. Catalanello claims that the article thereby presents these as statements of fact about him, the accuracy of which he vehemently denies. Were these sentences viewed in isolation, Catalanello would have a point. But the sentences cannot be stripped from their context. New Jersey courts, in fact, "presume that the public reads the entire article when [assessing] its fairness and accuracy." *Id.* at 524. And, as noted, at the very outset of the article, Kramer stated clearly that the Pacifico facts were drawn from the allegations of a complaint in an ongoing case, and were not facts found by a court or jury. Taken as a whole, Kramer's account gives a substantially correct account of the allegations in the Pacifico Complaint, and does not give the reader the erroneous impression that these allegations are proven "facts." Accordingly, Kramer's article recapping Pacifico's allegations is protected by the fair-report privilege. *See id.* at 530 ("[T]he fair-report privilege . . . cannot attach unless the report is full, fair, and accurate. Once that condition is met, the privilege becomes absolute and cannot be defeated.").

Catalanello also takes issue with Kramer's description, in the lecture, of Pacifico's lawsuit. The Amended Complaint alleges that the following statements from the lecture are defamatory:

> Ryan Pacifico was a trader at an investment firm in New York and on Wall Street. . . . He was doing really well . . . was going to have a fine, stable career, until his boss found out he was vegetarian. . . . This is a real case. I did not make this one up . . . because I am prone to making this up. . . . This one's real.

> So, his boss finds out he's a vegetarian and things just shift drastically for him there. The boss starts calling him, in front of everyone . . . "gay" . . . "homo" . . . "vegetarian homo."

> The boss now starts moving all their meetings to steak houses and burger joints. . . . And when someone complains and says, "We do this, what's Ryan going to eat," he says, "It's his fault. He's the one who chose to be a vegetarian homo."

> The boss . . . goes up to . . . Pacifico's desk and says . . . "You don't eat meat dude . . . at what point did you realize you were gay?"

> He eventually got fired . . . he took a leave of absence, sick leave and was fired while on sick leave.

Am. Compl. ¶ 33 (alterations in Am. Compl.). Again, however, the lecture must be viewed in its entirety. Elsewhere in the lecture, when describing the facts of Pacifico's suit, Kramer made clear that he is reporting on an ongoing case, which had not yet been resolved. *See, e.g.*, Lecture Video at 25:55 ("the facts are still contested at this point, but it doesn't look good"). And, although in so doing Kramer also opined on the merits of Pacifico's case, those statements of opinion are not actionable, *see infra* Part III.B.2. Nor do Kramer's statements regarding Pacifico's allegations fairly suggest to the reasonable observer that Kramer was reporting proven facts, as opposed to allegations. In sum, Kramer's statements in the lecture, considered in context, are a fair and accurate report of the Pacifico Complaint. They thus cannot support a defamation claim.

*Misek-Falkoff v. McDonald*, 177 F. Supp. 2d 224 (S.D.N.Y. 2001), is instructive as to this point.  In *Misek-Falkoff*, the plaintiff had unsuccessfully sued her former employer for, *inter alia*, discriminating against her on the basis of disability by placing her on permanent disability status.  *Id.* at 226.  An attorney wrote a law review article that was "essentially a parody or a criticism of the federal courts and the current environment in employment litigation," and in it described the plaintiff's unsuccessful suit against her employer as an example of a phenomenon the author had observed in employment law cases.  *Id.* at 230.  The plaintiff then sued the author for defamation, claiming that the article misrepresented her case and described her in an unduly negative light.  Although the court noted that the plaintiff's "criticism of the article is not totally lacking validity," the court dismissed the complaint for failure to state a defamation claim.  *Id.* at 231.  The court concluded that the discussion in the article "is not so removed from the facts as to lose its First Amendment protection as a fair report of a public judicial proceeding," *id.*, and thus "the article is privileged as fair comment on a matter of public interest and for that reason cannot be the subject of a valid defamation claim," *id.* at 232.

Similarly here, the challenged statements with respect to Kramer's account of Pacifico's lawsuit in both the article and the lecture, when measured against the specific allegations in the Pacifico Complaint, are a fair report of the Complaint.  Kramer's statements are accurate; they would not tend to mislead the reader as to the status of Pacific's case.  Finally, that Kramer did not discuss Catalanello's Answer in the Pacifico litigation does not prevent him from invoking the fair-report privilege; to claim that privilege, Kramer was not obliged to comprehensively report on the underlying litigation.  *See* Robert D. Sack, *Sack on Defamation:  Libel, Slander, and Related Problems* § 7.3.5.B.7 (PLI Press, 3d ed. 2013) (collecting cases); *cf. Costello*, 136 N.J. at 608 (omission does not defeat fair-report privilege, so long as omission does not "mislead

readers").  Accordingly, the Amended Complaint fails to state a claim for defamation with respect to these statements.

### 2.  Non-Actionable Statements of Opinion

Catalanello also alleges defamation with respect to portions of the article and the lecture in which Kramer offered what he termed an "alternative reading of Pacifico's case."  In these portions, Kramer addressed the "broader implications of the discrimination [Pacifico] faced in the workplace," and posited that "vegetarianism and sexual orientation merely served as proxies for the real reason Catalanello and others discriminated against Pacifico—he failed to conform to their idea of how a 'real' man is supposed to look and act."  Am. Compl. ¶ 15; *see also id.* ¶ 28 ("The lesson of Pacifico's case is that sex discrimination sometimes manifests as other forms of discrimination—in this case, as a hybrid of vegetarian and sexual orientation discrimination.") (emphases omitted).  These statements, however, are non-actionable statements of opinion.

"Statements of opinion, as a matter of constitutional law, enjoy absolute immunity." *DeAngelis*, 180 N.J. at 14 (quoting *Dairy Stores Inc. v. Sentinel Pub. Co., Inc.*, 104 N.J. 125, 147 (1986)).  In determining whether a statement is an actionable statement of fact or a non-actionable opinion, courts consider, *inter alia*, the statement's verifiability:  "A factual statement can be proved or disproved objectively while an opinion statement generally cannot.  Only if the statement 'suggested specific factual assertions that could be proven true or false could the statement qualify as actionable defamation.'"  *Id.* (quoting *Ward v. Zelikovsky*, 136 N.J. 516, 531 (1994)).  Courts "have been especially careful when applying defamation and related causes of action to academic works, because academic freedom is 'a special concern of the First Amendment.'"  *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013) (quoting *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603 (1967)).

Catalanello contends that Kramer, in the article, "simply made up material regarding what Catalanello did and why, and . . . presented this material as fact."  Am. Compl. ¶¶ 23, 39. In support of this allegation, Catalanello cites selected statements from the article, in which Kramer ascribes certain attitudes and motivations to him, including these:

> For Catalanello, the easiest way to belittle Pacifico—and perhaps the most harmful way to do so in their particular workplace setting—was to call him gay.  By doing so, Catalanello was relying on the stereotype, which is deeply rooted in our culture, that gay men are "fairies" and "sissies" and altogether not manly men.

> Catalanello's attitude about Pacifico's vegetarianism—that is, his animosity toward Pacifico's vegetarianism—is rooted in a gender stereotype about manliness.

> Catalanello picked on Pacifico because he thought that Pacifico did not eat what a "real" man is supposed to eat.

> According to Catalanello's worldview, a man is expected to be masculine and one way in which he should express his masculinity is by eating meat.

> Catalanello targeted Pacifico because he did not live up to this standard.

> Catalanello harassed Pacifico not because Pacifico is vegetarian, but because Pacifico was not sufficiently masculine.

> But in the context in which Catalanello used these words, he certainly meant it to demean Pacifico.

> Catalanello was engaging in a familiar practice by which heterosexual men try to make other heterosexual men seem insufficiently masculine.

> Catalanello thought Pacifico was less of a man because of his vegetarianism, so he treated him as though he were gay.

*Id.* ¶ 23 (emphases omitted).

The Amended Complaint further alleges that similar statements that Kramer made in the lecture as to Catalanello's motivations and attitudes were false and defamatory.  Those statements included these:

> It's vegetarian discrimination. . . . It's kind of sexual orientation discrimination because they are calling him homo and they are . . . thinking he is gay . . . At its core, I think it's gender stereotyping.
>
> The big . . . claim I make in the paper is that sometimes discrimination law manifests as something else.  Sometimes a bias will look like something else.  There's a proxy going on . . . when they say . . . "vegetarian homo" they're not actually calling him gay. . . . They are calling him less of a man.
>
> What's really going on?  They think he's a sissy because he's chosen to be more like a woman.
>
> If you have just chosen to act like a woman then you're a giant sissy.  Ultimately, what's happening here. . . . What the employer is doing is saying you're not conforming to what we think a man should be.  What the Wall Street image of a man is.

*Id*. ¶ 33.

Fairly read, however, these statements constitute Kramer's commentary on the allegations contained in the Pacifico Complaint.  As such, these statements are protected by the First Amendment.  The challenged statements are preceded by qualifying language that makes clear that Kramer is offering his *opinion* as to the motivations underlying Catalanello's alleged actions, and his *opinion* as to how Pacifico's case fits into his theories as to gender and sexuality discrimination law.   Significantly, in the article, Kramer states explicitly that he "*argues* that Catalanello viewed Pacifico's vegetarianism as a proxy for effeminacy," Article at 23 (emphasis added); and in the lecture, he states that he "*think[s]* it's gender stereotyping," Lecture Video (emphasis added).  Further, Kramer's statements as to Catalanello's statement of mind are not, by their nature, "specific factual assertions that could be proven true or false."  *DeAngelis*, 180 N.J. at 14.  Read in context, these statements are properly viewed as statements of opinion—an academic's ruminations—and therefore are not actionable as defamation.  *See id.* ("[I]n addition to the language, courts must examine 'the context in which the statement appears' to determine whether the statement was capable of a defamatory meaning.") (quoting *Ward*, 136 N.J. at 532);

*Samost v. Voorhees*, No. L-1143-11, 2013 WL 978243, at *5 (N.J. Sup. Ct. App. Div. Mar. 14, 2013) (affirming dismissal of defamation claim on the ground that the challenged statements were "prefaced by the qualifier, 'we believe,' which a reasonable person would have recognized as [the speaker's] opinion") (other brackets omitted).

For these reasons, the Court holds that Kramer's interpretation of and academic commentary on the allegations contained in the Pacifico Complaint constitute non-actionable statements of opinion.  And, because none of the statements that Catalanello challenges in the Amended Complaint is actionable as defamation, the Court has no need to decide the level of fault that would apply to defamatory statements against Catalanello, or whether the Amended Complaint adequately alleges the requisite level of fault.  *See McLaughlin*, 331 N.J. Super. at 314 ("The issue of fault in a defamation case arises only after a defamatory communication . . . has been established.") (internal quotation marks and citation omitted) (alteration in *McLaughlin*).  Catalanello's defamation claims are dismissed.

## C.     False Light Invasion of Privacy

Finally, Catalanello claims that Kramer's statements in both the article and the lecture invaded his privacy by placing him in a false light.  Am. Compl. ¶¶ 41–45, 58–62.

New Jersey courts recognize a cause of action for false-light invasion of privacy for "invasions of privacy involving publicity that unreasonably places the other in a false light before the public." *Romaine v. Kallinger*, 109 N.J. 282, 293 (1988) (internal quotation marks and citations omitted).  To establish liability, the plaintiff must prove (1) that "'the false light in which the other was placed would be highly offensive to a reasonable person'"; and (2) that "'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'"  *Id.* (quoting *Restatement (Second) of*

*Torts* § 652E)); *see also DeAngelis*, 180 N.J. at 19 (same).  "[T]he published matter must be false, though not necessarily defamatory."  *Machleder*, 801 F.2d at 57–58.

In analyzing a claim of false-light invasion of privacy, the court first determines "whether the criticized matter is capable of the meaning assigned to it by plaintiff, and whether that meaning is highly offensive to a reasonable person."  *Romaine*, 109 N.J. at 295.  In making this determination, courts examine the challenged statements "in the context of the whole article to determine if they constitute an invasion of privacy."  *Id.* (internal quotation marks and citation omitted).

Here, the Amended Complaint conclusorily alleges that the "statements of and concerning Plaintiff contained in Defendant's Law Review Article [and lecture] are false and placed Plaintiff in a false light," Am. Compl. ¶¶ 42, 59, and that "[t]he false light in which Plaintiff was placed would be highly offensive to a reasonable person," *id.* ¶¶ 43, 60.  However, substantially for the reasons reviewed above, the Amended Complaint fails to plausibly allege that Kramer's statements regarding Catalanello's alleged harassment of Pacifico were "false" statements of fact.  As noted, Kramer disclosed, in both the article and the lecture, that he was describing unproven allegations contained in a filing in a pending court case.  Viewed in that context, Kramer's statements accurately described the Pacifico Complaint.  Further, for the reasons explained above, the remaining statements that Catalanello challenges (*i.e.*, Kramer's commentary on the broader import of the circumstances alleged in the Pacifico Complaint) are statements of opinion, which by definition cannot be proven false.  Finally, because Kramer adequately disclosed that he was describing allegations rather than established facts, the challenged statements "do[] not carry the meaning ascribed to [them] by [Catalanello]," and thus

21

"cannot be found to be highly offensive to a reasonable person." *Romaine*, 109 N.J. at 296.

Accordingly, the Amended Complaint fails to state a claim for false-light invasion of privacy.

## CONCLUSION

For the foregoing reasons, Kramer's motion to dismiss the Amended Complaint is granted. The Clerk of Court is respectfully directed to terminate all pending motions, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: May 7, 2014
New York, New York